**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Scott McLaughlin

   v.                                        Civil No. 14-cv-370-LM
                                             Opinion No. 2015 DNH 056
Bank America, N.A. and Bank
of New York Mellon f/k/a
The Bank of New York

**O R D E R**

Scott McLaughlin is suing Bank of America, N.A. ("BANA") and Bank of New York Mellon ("BONY").  His claims arise from BANA's servicing of his mortgage and BONY's current attempt to foreclose upon it.  Before the court is respondents' motion to dismiss McLaughlin's second amended petition.  McLaughlin objects.  For the reasons that follow, respondents' motion to dismiss is granted in part.

**I. Background**

The facts in this section are drawn from McLaughlin's second amended petition along with various documents that courts are allowed to consider when ruling on motions to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Claudio-De León v. Sistema Univ. Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014).  In December 2005, McLaughlin and his wife received a loan from Wilmington Finance ("Wilmington").  In

exchange, they gave Wilmington a promissory note, and they gave a mortgage securing repayment of that note to Mortgage Electronic Registration Systems ("MERS"), "acting solely as a nominee for [Wilmington] and [Wilmington]'s successors and assigns."  Resp't's Mem. of Law, Ex. B (doc. no. 15-3), at 1. MERS assigned the mortgage to BAC Home Loans Servicing ("BAC"). BAC's successor, BANA, assigned the mortgage to BONY.  BANA, however, continued to service the mortgage.  In early 2009, the McLaughlins began having trouble with the servicing of their mortgage.  Thereafter, BANA began the process of foreclosing on it.

In August 2012, the McLaughlins filed a petition against BANA in the Cheshire County Superior Court (hereinafter "McLaughlin I") asking the court to: (1) rule that BANA violated the mortgage contract; (2) find the mortgage and the note to be void; and (3) "[h]alt any actions by [BANA] until all reasonable legal actions have been exhausted."  Notice of Removal, Ex. A, at 4 of 48, McLaughlin v. Bank of Am., N.A., No. 12-cv-00386-SM (D.N.H. Oct. 11, 2012), ECF No. 1-1.  Those requests for relief were based upon various factual allegations, including an allegation that, when BANA first attempted to foreclose on the McLaughlins' mortgage, it did not hold their note.  See id. at 3.

In McLaughlin I, BANA removed the state-court action to this court.  In an amended complaint, filed in response to an order of the court, the McLaughlins alleged that BANA did not have possession of both the note and the mortgage at the time it initiated foreclosure proceedings in August 2010.  Am. Compl. ¶ 10, McLaughlin I, ECF No. 9.  In March 2013, Judge McAuliffe dismissed McLaughlin I for failure to state a claim upon which relief could be granted.

At some point in 2013, McLaughlin does not say exactly when, he began negotiating a loan modification with BANA and BONY, at their invitation.  That process has not resulted in either a loan modification or a formal denial.

In the meantime, BANA assigned the mortgage to BONY, and shortly thereafter, BONY began the process of foreclosing on it. In April 2013, in an effort to avoid that second attempt to foreclose on their mortgage, BONY foreclosure, the McLaughlins filed an ex parte petition against BANA and BONY in the Cheshire County Superior Court (hereinafter "second action").  The superior court granted the McLaughlins a temporary injunction, but later granted respondents' motion to dissolve the injunction and dismiss the case.  Judge Kissinger based his ruling upon the res judicata effect of Judge McAuliffe's order of dismissal in McLaughlin I.  In his order, Judge Kissinger characterized the

complaint before Judge McAuliffe as asserting that BANA did not
possess both the mortgage and the note when it initiated
foreclosure proceedings.  See Resp't's Mem. of Law, Ex. F (doc.
no. 15-7), at 3.[1]  Thereafter, he explained his conclusion that
the claim before Judge McAuliffe and the claim before him were
the same:

> Although neither of the petitioners' complaints is
> particularly detailed, it appears that they have made
> the exact same allegations in both cases, including:
> (1) that [BANA] lacks the ability to foreclose based
> on a faulty chain of title. . . .

Id. at 7.  The New Hampshire Supreme Court ("NHSC") affirmed in
an order dated April 3, 2014.

At some point after the NHSC affirmed Judge Kissinger's
ruling, BANA and BONY scheduled a third foreclosure sale for
July 23, 2014.  On July 21, i.e., two days before the scheduled
foreclosure sale, McLaughlin sent BANA a correspondence
requesting proof of who owned his note, plus the following
additional information:

> a "complete life of loan transaction history," certain
> applicable codes used by [BANA], MERS milestone
> reports, information pertaining to the pooling and
> servicing agreement related to the Trust of which
> [BONY] is allegedly Trustee, "copies of all collection
> notes and communications files," "an itemized
> statement of the amount needed to fully reinstate the
> loan," "all communications with any non-lawyer third-

---

[1] The formal citation to Judge Kissinger's opinion is
McLaughlin v. Bank of Am., N.A., No. 2012-CV-00232 (N.H. Super.
Ct., Cheshire Cty., July 9, 2013).

```
party providers," "all Form P-309 screen shots of all
system accounts," the identities of all persons
accessing the account from February 1, 2009 through
the present, evidence of the negotiation history of
the note, security logs showing terminals that had
accessed the account since February 1, 2009, [the] FBI
file number with respect to a break-in that occurred
[on] July 24, 2010 and all notes and documents,
including electronic and paper documents, as well as
all transcripts of all recorded phone calls.
```

Second Am. Pet. (doc. no. 13) ¶ 18.  While McLaughlin asked for various forms of information, his correspondence, as described in his second amended petition, did not claim that his account was in error or request any correction thereto.  Neither BANA nor BONY ever responded to McLaughlin's request for information.

The day after McLaughlin sent his correspondence to BANA, which was also the day before the scheduled foreclosure sale, McLaughlin filed a complaint to enjoin the foreclosure, see N.H. Rev. Stat. Ann. § 479:25, II, in the Cheshire County Superior Court.  Judge Kissinger granted a temporary injunction.  Then, respondents removed the case to this court.  In his second amended petition, filed on October 28, 2014, McLaughlin asserts the following claims: Lack of Power and Authority to Foreclose – No Proof of "Blue-Ink" Note (Count I); Lack of Power and Authority to Foreclose – Bifurcation of Note and Mortgage (Count II); Lack of Power and Authority – MERS Had No Title to Transfer (Count III); Failure to Mitigate Losses (Count IV); and Violation of 12 U.S.C. § 2605(e) (Count V).  McLaughlin seeks

relief in the form of: (1) preliminary and permanent injunctions barring BANA and BONY from foreclosing on his mortgage; and (2) damages for BANA's violation of 12 U.S.C. § 2605(e).

## II. Discussion

Respondents move to dismiss Counts I, II, and III on grounds of res judicata and collateral estoppel, and move to dismiss counts IV and V on grounds that neither states a claim upon which relief can be granted.

### A. Counts I , II & III

Respondents argue that the claims stated in Counts I, II, and III are barred by res judicata and collateral estoppel. They base that argument on the outcome of the McLaughlins' second action, which resulted in the NHSC's affirmance of Judge Kissinger's dismissal (which was itself based upon the res judicata effect of Judge McAuliffe's dismissal of McLaughlin I). Counts I, II, and III are, indeed, barred by res judicata.

Under New Hampshire law, the doctrine of res judicata is well established.

> "The doctrine of res judicata prevents the parties from relitigating matters actually litigated and matters that could have been litigated in the first action." Appeal of Morrissey, 165 N.H. 87, 92, 70 A.3d 465 (2013) (quotation omitted). "The doctrine applies if three elements are met: (1) the parties are the same or in privity with one another; (2) the same cause of action was before the court in both

instances; and (3) the first action ended with a final judgment on the merits." Id.

In re Estate of Bergquist, 166 N.H. 531, 534-35 (2014).

McLaughlin concedes that the first requirement for res judicata is established, argues that the second has not, and appears to take two different positions with regard to the third.  The court begins with the third requirement, and then turns to the second.

### 1. Final Judgment on the Merits

In his memorandum of law, McLaughlin says: "The Parties were the same in all actions, and based upon the [NHSC]'s decision, the previous actions ended with a judgment on the merits."  Pet'r's Mem. of Law (doc. no. 16-1) 6.  Yet, in that same memorandum, McLaughlin devotes more than a page to an argument headed: "Neither Res Judicata nor Collateral Estoppel Applies Because Denials of Requests for Preliminary Injunctions Cannot be Given Preclusive Effect."  Id. at 8-9.  If, indeed, McLaughlin is arguing that res judicata is unavailable due to the lack of a final judgment on the merits, that argument is unavailing.

The superior court order the NHSC affirmed was not just an order dissolving a temporary injunction, it was also an order dismissing the McLaughlins' case.  See Resp't's Mem. of Law, Ex.

F (doc. no. 15-7), at 8.  The NHSC acknowledged as much when it
described the case before it this way:

> The petitioners, Scott McLaughlin and Nancy
> McLaughlin, appeal an order of the superior court
> dismissing their action against the respondents, Bank
> of America, N.A. and Bank of New York Mellon, and
> granting the respondents' motion to dissolve the
> temporary injunction enjoining foreclosure of their
> home.

Resp't's Mem. of Law, Ex. G (doc. no. 15-8), at 1.[2]  So, lacking
the necessary factual predicate for his argument, i.e., a court
decision that does nothing more than rule on a request for
injunctive relief, McLaughlin is not aided by his reliance upon
the principle that the denial of a request for a preliminary
injunction is not a final judgment on the merits.  Moreover,
while the case from which he draws that legal principle does
hold that it may be improper for a trial court ruling on a
request for a preliminary injunction to rule "on [a] permanent
injunction without complying with the requirements of [Superior
Court] Rule 161(b)," N.H. Dep't of Envtl. Servs. v. Mottolo, 155
N.H. 57, 65 (2007), that is not what happened here.  And, in any
event, there is nothing in the NHSC's order on the McLaughlins'
appeal to suggest that before that court, they ever complained
that there was anything procedurally improper about the superior

---

[2] The formal citation to the NHSC' opinion is McLaughlin v.
Bank of Am., N.A., No. 2013-0628 (N.H. Sup. Ct. Apr. 3, 2014).

court's dismissal of their claims.  In short, respondents have established the third requirement for the application of res judicata, a final decision on the merits.  That leaves the second requirement, i.e., that the cause of action before this court was also before the NHSC.

### 2. Same Cause of Action

The NHSC has defined the term "cause of action" to mean: (1) "the underlying right that is preserved by bringing a suit or action," In re Bergquist, 166 N.H. at 535 (quoting Hansa Consult of N. Am. v. Hansaconsult Ingenieurgesellschaft, 163 N.H. 46, 50 (2011)); (2) "the right to recover, regardless of the theory of recovery," id. (quoting Appeal of Morrissey, 165 N.H. 87, 92 (2013)); and (3) "all theories [upon] which relief could be claimed on the basis of the factual transaction in question," id.  With those principles in mind, the court turns to the specific claims raised in Counts I, II, and III.

### a. Count I

Count I is McLaughlin's claim that BONY is barred from foreclosing on his mortgage because it does not possess the original "blue-ink" note, repayment of which is secured by the mortgage.  The McLaughlins, however, raised that very same argument in the petition that initiated McLaughlin I, which resulted in the decision that was the basis for Judge

Kissinger's application of res judicata in the McLaughlins'
second action.  McLaughlin argues that this case involves a new
cause of action because it involves a different foreclosure than
the ones at issue in the first and second actions.  The court
cannot agree.  Each of McLaughlin's three cases involved the
same cause of action: McLaughlin's purported right not to have
his mortgage foreclosed by an entity that does not possess the
note secured by the mortgage.

In summary, as to Count I, respondents have established all
three elements of res judicata.  As a consequence, they are
entitled to dismissal of Count I, with prejudice.

### b. Count II

Count II is McLaughlin's claim that BONY is barred from
foreclosing because it does not possess both the mortgage and
the note.  Notwithstanding McLaughlin's argument that this
defense was not available until the summer of 2014, the
McLaughlins actually raised it in the amended complaint they
filed in McLaughlin I, in January of 2013.  Because they raised
that argument in McLaughlin I, the reasoning applicable to Count
I applies with equal force to Count II.  Respondents are
entitled to dismissal of Count II, with prejudice, on grounds of
res judicata.

c. Count III

Count III is McLaughlin's claim that BONY lacks the power
and authority to foreclose because at the time MERS purported to
assign the mortgage to BAC, it had no interest to assign, and
thus, BONY never received a valid legal interest in the
mortgage.  Unlike the legal theories underlying Counts I and II,
the legal theory underlying Count III was not articulated in
either of the McLaughlins' two earlier actions.  But, because
the factual basis for that argument, i.e., the ineffectiveness
of MERS's purported assignment to BAC, predated McLaughlin I,
nothing prevented the McLaughlins from raising that theory in
their second action.  Because res judicata bars not only matters
that were actually litigated, but also "matters that could have
been litigated in the first action," In re Bergquist, 166 N.H.
at 534-35, Count III is also barred by res judicata.  As with
Counts I and II, respondents are entitled to dismissal of Count
III, with prejudice.

B. Count IV

Count IV is McLaughlin's claim that by moving to
foreclosure before rendering a decision on his request for a
loan modification, BONY has breached its duty to mitigate its
losses.  In other words, McLaughlin alleges that BANA and BONY
have engaged in what has come to be known as "dual tracking"

11

which consists of "working with mortgagees on loan modifications while simultaneously moving for foreclosure," Frangos v. Bank of Am., N.A., No. 13-cv-472-PB, 2014 WL 3699490, at *3 (D.N.H. July 24, 2014).  Based upon respondents' breach of their purported duty to mitigate their losses, McLaughlin asks the court to enjoin any foreclosure sale until BONY has fully mitigated its losses.  While McLaughlin is not entirely clear on this point, the court presumes that the loss-mitigation measures to which he refers consist of either modifying his loan or rendering a decision on his request for a loan modification.

Respondents argue that Count IV should be dismissed because Count IV states a defense, not an affirmative cause of action,[3] and because even if they did engage in dual tracking, they did not violate McLaughlin's rights by doing so.  In other words, respondents ask the court to dismiss Count IV for failure to state a claim on which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

Adjudicating a Rule 12(b)(6) motion requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff

---

[3] The court rejects that argument.  Because Count IV asserts McLaughlin's purported right to have respondents mitigate their losses, that claim asserts a cause of action.  See In re Bergquist, 166 N.H. at 535 (defining cause of action as, among other things, "the underlying right that is preserved by bringing a suit or action") (citation and internal quotation marks omitted).

will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" González-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 247 (1st Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The court begins by stating the obvious: "dual tracking" is not a cause of action.  Rather, it is a form of conduct that mortgagors assert to be a violation of some specific legal right.  Typically, dual tracking is alleged as the factual predicate for a claim that a lender or loan servicer has violated the implied covenant of good faith and fair dealing. See, e.g., Frangos, 2014 WL 3699490, at *3; see also Schaefer v. IndyMac Mortg. Servs., No. 12-cv-159-JD, 2012 WL 4929094, at *6 (D.N.H. Oct. 16, 2012) (ruling that dual tracking is not a breach of the implied covenant of good faith and fair dealing).

Here, McLaughlin's Count IV is not a claim for breach of the implied covenant of good faith and fair dealing.  Rather, the claim asserted in Count IV relies upon the legal principle that "[t]he claimant in a breach of contract claim must take

such measures to lessen his or her loss as can be effectuated 'with reasonable effort and without undue risk.'" Audette v. Cummings, 165 N.H. 763, 768 (2013) (quoting Coos Lumber Co. v. Bldrs. Lumber & Supply Corp., 104 N.H. 404, 408 (1963); citing Grenier v. Barclay Square Comm'l Condo. Owners' Ass'n, 150 N.H. 111, 119 (2003)).  Respondents, however, are not claimants in a breach of contract claim; they are seeking to exercise the power of sale contained in a mortgage.  Thus, the legal principle on which McLaughlin relies is inapplicable to this case and does not stand for the proposition that a foreclosing mortgagee may not engage in dual tracking.  Because McLaughlin has identified no legal authority that requires a mortgagee to mitigate the losses resulting from a mortgagor's default by modifying a mortgagor's loan, or rendering a decision on the mortgagor's request for a loan modification, before it may foreclose, McLaughlin has not stated a claim for relief that is plausible on its face.

Accordingly, respondents are entitled to dismissal of Count IV.  Moreover, because the defect in Count IV is the lack of a viable cause of action rather than a failure to allege sufficient facts to state a claim under a cause of action that actually exists, Count IV is dismissed with prejudice.

14

C. Count V

Count V is McLaughlin's claim that BANA violated his rights under 12 U.S.C. § 2605(e) by failing to acknowledge and respond to a Qualified Written Request ("QWR"), sent pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617.  Based upon that purported statutory violation, McLaughlin seeks monetary damages.  Respondents argue that Count V fails to state a claim on which relief can be granted.

The statute on which Count V is based provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . ."[4]  12 U.S.C. § 2605(e)(1)(A).

---

[4] For purposes of 12 U.S.C. § 2605(e)(1)(A), RESPA defines the term "servicing" to mean

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

Regarding what constitutes a "qualified written request,"
the statute provides:

> For purposes of this subsection, a qualified
> written request shall be a written correspondence,
> other than notice on a payment coupon or other payment
> medium supplied by the servicer, that –
>
>> **(i)** includes, or otherwise enables the
>> servicer to identify, the name and account of the
>> borrower; and
>
>> **(ii)** includes a statement of the reasons for
>> the belief of the borrower, to the extent
>> applicable, that the account is in error <u>or</u>
>> provides sufficient detail to the servicer
>> regarding other information sought by the
>> borrower.

12 U.S.C. § 2605(e)(2)(B) (emphasis added).

In addition to obligating servicers to acknowledge QWRs,
RESPA also obligates servicers to take various actions in
response to QWRs.  Two of those three obligations arise when a
QWR asserts that the borrower's account is in error.  <u>See</u> 12
U.S.C. §§ 2605(e)(2)(A) & (B).  Based upon the facts alleged in
McLaughlin's complaint concerning his correspondence with BANA,
which included no allegation that he complained to BANA that his
account was in error, BANA's only obligation to McLaughlin was
to, within 30 days of receiving his correspondence: (1) conduct
an investigation; (2) provide him with the information he
requested "or an explanation of why the information requested
[was] unavailable or [could not have been] obtained by the

servicer," 12 U.S.C. § 2605(e)(2)(C)(i); and (3) provide him
with the name, address, and telephone number of someone at BANA
who could assist him, see 12 U.S.C. § 2605(e)(2)(C)(ii).

Turning to damages, the statute provides that individuals
may recover both statutory damages of up to $2,000 and actual
damages.  See 12 U.S.C. § 2605(f)(1).  Because McLaughlin makes
no allegations that would support a claim that respondents have
engaged in a pattern and practice of violating § 2605(e), he is
limited to recovering actual damages, were he to prevail on his
RESPA claim, see § 2605(f)(1)(B).

Respondents argue that McLaughlin has failed to state a
claim on which relief can be granted because: (1) he has failed
to adequately allege actual damages; and (2) his correspondence
with BANA requested information that relates to claims that were
decided against him in the two actions that preceded this one.

Respondents' second argument, which focusses on the content
of McLaughlin's correspondence, lacks merit.  If, indeed, the
correspondence McLaughlin sent BANA requested no information
regarding the servicing of his loan, under the definition of
"servicing" that appears in § 2605(i)(3), then, perhaps,
McLaughlin's correspondence would not have been a QWR.  And, of
course, a servicer's failure to respond to a correspondence that
is not a QWR is not a RESPA violation.  See, e.g., Kelly v.

17

Fairon & Assocs., 842 F. Supp. 2d 1157, 1160-61 (D. Minn. 2012). But, construing McLaughlin's complaint in his favor, as it must, see Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011), the court can discern allegations describing several requests for information that arguably relate to the servicing of McLaughlin's loan.  These include requests for: (1) "a complete life of loan transaction history," Second Am. Pet. (doc. no. 13) ¶ 18; (2) "copies of all collection notes," id.; and (3) "an itemized statement of the amount needed to fully reinstate the loan," id.  While the first two items are described somewhat ambiguously, it seems clear that the third item relates squarely to the servicing of McLaughlin's loan.  Because a correspondence requesting both loan-servicing information and other information qualifies as a QWR, see Menashe v. Bank of N.Y., 850 F. Supp. 2d 1120, 1130-32 (D. Haw. 2012), respondents' identification of requested information that does not qualify as loan-servicing information is of no moment.  As a consequence, the court cannot conclude, as a matter of law, that McLaughlin has failed to adequately allege that he submitted a QWR to BANA.

Respondents' first argument, i.e., that McLaughlin's complaint does not adequately allege actual damages, is a different matter.  Both parties agree that to state a viable

RESPA claim, a plaintiff must allege actual damages. "In order to plead 'actual damages' sufficiently, the plaintiff must allege specific damages and identify how the purported RESPA violations caused those damages." Moore v. Mortg. Elec. Reg. Sys., Inc., 848 F. Supp. 2d 107, 122 (D.N.H. 2012) (quoting Okoye v. Bank of N.Y. Mellon, Civ. No. 10-11563-DPW, 2011 WL 3269686, at *17 (D. Mass. July 28, 2011)). Moreover, to state a claim for actual damages, the plaintiff must allege a pecuniary loss. See, e.g., Ghuman v. Wells Fargo Bank, N.A., 989 F. Supp. 2d 994, 1007 (E.D. Cal. 2013) ("A RESPA claim's failure to allege a pecuniary loss resulting from a failure to respond is fatal to the claim.") (citation omitted); Javaheri v. JPMorgan Chase Bank, N.A., No. CV10-08185 ODW (FFMx), 2011 WL 97684, at *5 (C.D. Cal. Jan. 11, 2011) (agreeing with defendants that "the RESPA claim fails because 'no pecuniary loss is alleged'").

Based upon the foregoing legal principles and the facts of this case, to state a claim upon which relief can be granted, McLaughlin must allege that after August 21, 2014,[5] he suffered a

---

[5] Given the date of McLaughlin's inquiry to BANA, and the 30-day deadline for responding to a QWR, August 21, 2014, is the earliest date on which BANA's failure to respond could qualify as a RESPA violation. See Delino v. Platinum Cmty. Bank, 628 F. Supp. 2d 1226, 1232 (S.D. Cal. 2009) (explaining that claims under 12 U.S.C. § 2605(e) become ripe only after statutory response period has expired).

pecuniary loss that resulted from BANA's failure to respond to

his correspondence and provide him with the information he

requested.  In his petition, McLaughlin states his claim for

damages in the following way:

> As a proximate result of [BANA]'s failure to
> acknowledge and respond to the QWR, [McLaughlin] has
> suffered losses, including the inability to reinstate
> his mortgage, the inability to know precisely what
> fees have been assessed against [his] account, and for
> what reason, the continued accrual of fees and costs
> against the account as time passes, and therefore, the
> inability to bring the account current, and the
> inability to know for certain to whom he owes the
> obligation under the Note.

Second Am. Pet. (doc. no. 13) ¶ 48.

Stripped to its essence, and read in the manner most

favorable to McLaughlin, paragraph 48 alleges five losses: (1)

inability to reinstate his mortgage; (2) inability to know what

fees have been assessed against his account; (3) continued

accrual of fees and costs against his account; (4) inability to

bring his account current; and (5) inability to know who holds

the note.  There are several problems with that statement of

losses.

To begin, the fifth alleged loss, lack of knowledge of who

holds the note, is simply not a pecuniary loss.  And, while the

other four alleged losses are reasonably understood as touching

on financial matters, McLaughlin has not alleged how those

failures resulted in a pecuniary loss to him.  Because

McLaughlin has not alleged any specific pecuniary loss, he has failed to state a claim on which relief can be granted under 12 U.S.C. § 2605(e).

Not only has McLaughlin failed to adequately allege a pecuniary loss, his allegations concerning damages also run into trouble on the causation requirement.  See Moore, 848 F. Supp. 2d at 122 ("the plaintiff must allege specific damages and identify how the purported RESPA violations caused those damages") (quoting Okoye, 2011 WL 32696886, at *17) (emphasis in Okoye).  For example, McLaughlin asserts that the lack of a response to his QWR rendered him unable to reinstate his loan, but he has not alleged facts sufficient to support a claim that lack of the information he requested prevented him from reinstating his loan at any point after August 21, 2014, which is the earliest date on which BANA's failure to provide information could have ripened into a RESPA violation. Similarly, McLaughlin asserts that the lack of a response to his QWR resulted in the continued accrual of fees and costs against his account.  But McLaughlin has not alleged facts sufficient to support a claim that if BANA had properly responded to his inquiry, fees and costs against his account would have stopped accruing.  Nor has he alleged that he ever paid any fees or costs after August 21, 2014.  It is therefore impossible to

ascertain what his pecuniary loss might be.  McLaughlin's claim that BANA's failure to respond to his inquiry rendered him unable to bring his account current suffers from the same infirmity as his claim concerning his inability to reinstate his loan.  Finally, while McLaughlin asserts that the lack of a response to his QWR rendered him unable to know for certain to whom he owes the obligation under his note, Judge England has ruled that a servicer's failure to respond to a borrower's request for the identity of the "true owner of the mortgage note," Lal v. Am. Home Servicing, Inc., 680 F. Supp. 2d 1218, 1220 (E.D. Cal. 2010), does not state a claim under RESPA for actual damages, see id. at 1223.

In sum, McLaughlin has not adequately alleged any pecuniary loss, nor has he adequately alleged a causal connection between BANA's failure to respond to his inquiry and the non-pecuniary damages he does allege.  Thus, he has failed to state a claim on which relief can be granted under 42 U.S.C. § 2605(e).

The court further notes that none of the cases on which McLaughlin relies supports a contrary result.  In Woods v. Greenpoint Mortgage Funding, Inc., the alleged damages consisted of $100,000 in mortgage payments that: (1) the plaintiff made in reliance upon information from the defendant, and (2) may have been misdirected or misapplied, see No. CIV. 2:09-1810 WSB KJM,

2010 WL 1729711 (E.D. Cal. Apr. 28, 2010).  Here, by contrast,
McLaughlin identifies no loan payments he made after BANA failed
to respond to his July 2014 inquiry.  Padgett v OneWest Bank,
FSB, No. 3:10-CV-08, 2010 WL 1539839 (N.D. W. Va. Apr. 19,
2010), is plainly inapposite because in that case, unlike this
one, the plaintiff's QWR included a request to correct his
account.  In that case, an "allegedly inaccurate imposition of
late fees satisfie[d] the pleading requirement for damages."
Id. at *14.  Here, McLaughlin does not claim that he suffered
pecuniary losses as a result of BANA's failure to correct an
inaccurate imposition of late fees he pointed out in a QWR.
McLaughlin's reliance upon Ameriquest Mortg. Co. v. Nosek (In re
Nosek), 544 F.3d 34, 41 n.4 (1st Cir. 2008), is also misplaced.
In that bankruptcy case, the court of appeals decided no RESPA
issue at all, and the footnote McLaughlin cites is nothing more
than the court's description of the complaint in the debtor's
adversary action.  In sum, there is nothing in Woods, Padgett,
or In re Nosek that supports the proposition that McLaughlin has
adequately alleged actual damages resulting from BANA's failure
to respond to his inquiry.

That said, because Count V is subject to dismissal due to a
failure to allege sufficient facts rather than for failure to
identify a viable cause of action, and out of an abundance of

23

caution, Count V is dismissed without prejudice to McLaughlin's filing an amended complaint.  See Ghuman, 989 F. Supp. 2d at 1007 (dismissing, with leave to amend, RESPA claim that failed to adequately allege actual damages); Henson v. Bank of Am., 935 F. Supp. 2d 1128, 1146 (D. Colo. 2013) (dismissing, with leave to amend, RESPA claim with multiple pleading deficiencies, including failure to adequately allege actual damages).

### III. Conclusion

For the reasons detailed above, defendants' motion to dismiss, document no. 15, is granted in part.  Counts I-IV are all dismissed with prejudice, while Count V is dismissed without prejudice, and with leave to amend.  Furthermore, because there is no form of relief available under Count V that would entitle McLaughlin to an injunction against BONY's foreclosure of his mortgage, the temporary injunction issued by Judge Kissinger is hereby dissolved.  With regard to Count V, McLaughlin has 20 days from the date of this order to file an amended complaint.  Failure to do so will result in the dismissal of Count V, with prejudice, and the closure of this case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 18, 2015

24

cc:    Stephen T. Martin, Esq.
       Thomas J. Pappas, Esq.